\*\*E-Filed\*\*
August 5, 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MARQUEZ BROTHERS INTERNATIONAL, INC.,

Plaintiff,

v.

ATLETICO MORELIA S.A. DE C.V.,

Defendant.

NO. 5:05-cv-1889 RS

**ORDER DENYING MOTION FOR ENTRY OF PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff Marquez Brothers International, Inc. ("Marquez Brothers") seeks to prevent defendant Atletico Morelia S.A. de C.V. ("Morelia") from playing any soccer matches in the United states that are not promoted by Marquez Brothers pending a trial on the merits of Marquez Brothers' claims for breach of contract and other claims for relief. The motion is based on Marquez Brothers' contentions that (1)it will suffer irreparable harm if the requested injunctive relief is not granted; (2) the balance of hardships tilts sharply in its favor; (3) it has a strong likelihood of success on the merits; and, (4) the broader public interest factors weigh in favor of granting injunctive relief. The motion was fully briefed and heard by the Court on August 3, 2005. Because Marquez Brothers has failed to establish that it will suffer irreparable harm if an injunction is not entered, the motion for a preliminary injunction is denied, as explained below.

## II. BACKGROUND

Marquez Brothers is a San Jose-based producer and distributor of Mexican food products in the United States. As part of its promotional efforts, Marquez Brothers sponsors many Latin American-themed events such as rodeos, festivals, concerts, and, of particular relevance to the present motion, sports matches and tournaments. Morelia is a Mexican professional soccer club that is a member of the First Division, the Mexican equivalent of America's Major League Soccer ("MLS"). The team's hometown is Morelia, Michoacan, Mexico, and it participates in "friendly" soccer matches in the United States to supplement league and tournament revenue.

In Fall 2002, Marquez Brothers approached Morelia regarding the possibility of sponsoring friendly matches in the United States featuring the team. The parties negotiated a contract in April 2003 that provided for Morelia to participate in ten friendly matches sponsored by Marquez Brothers and against first professional division clubs, such as MLS teams. Morelia would have the right to accept or reject dates and opponents proposed by Marquez Brothers, and no friendly matches would be scheduled within three days of Morelia's league or tournament matches. The contract further provided that the parties had an "understanding" the ten matches would take place before the end of 2004 but that the contract duration would be lengthened if necessary to accommodate the completion of matches that had been "cancelled." Morelia was to be paid $125,000 upon signing, and $125,000 in January 2004. Additionally, Morelia would be paid $25,000 after each match was played.

Each party contends that the other failed to live up to its obligations to schedule the matches contemplated under the agreement. What is not in dispute is that Morelia did not play any Marquez Brothers-sponsored matches in 2003, and Marquez Brothers did not pay Morelia the $125,000 installment slated under the contract for January 2004. Nevertheless, the parties continued to attempt to schedule matches and Morelia did play twice in 2004, once against Atlas in Salinas, California and once against Chivas in San Jose, California. Chivas and Atlas are, like Morelia, members of Mexico's First Division. Marquez Brothers paid Morelia $25,000 after each match, pursuant to the terms of the contract.

In February 2005, ProAmerica World Sports, Inc., ("ProAmerica"), another promoter, contacted Morelia about arranging friendly matches in the United States. ProAmerica was able to arrange a March 23, 2005 match against the L.A. Galaxy, an MLS team. When ProAmerica informed Marquez Brothers of this pending match, Marquez Brothers successfully lobbied the United States Soccer Federation, the

2

American professional soccer governing body, to prevent Morelia from playing any non-Marquez Brothers sponsored matches, a decision the Federation subsequently reversed effective May 1, 2005.

On March 8, 2005, Marquez Brothers filed a complaint in the Santa Clara Superior Court, alleging that Morelia had breached the contract. Marquez Brothers requested that the court grant temporary injunctive relief and, after trial, money damages for the losses it had allegedly incurred. Morelia avers, however, that it was not served with the complaint, and the record before the Court does not include any sufficient proof of service. Instead, Morelia claims it discovered the existence of the lawsuit when Marquez Brothers' counsel faxed a Cal. Civ. Proc. Code § 527(c)(2)(A) notice to Morelia executives, informing them that Marquez Brothers was seeking a temporary restraining order ("TRO") in state court. Morelia was unable to retain United States counsel until after the TRO hearing date had passed and, consequentially, the TRO was granted after an ex parte hearing on May 2, 2005. Morelia removed the case to this Court on May 9, 2005. The TRO expired on May 17, 2005. See Cal Civ. Proc. Code § 527(d)(1); Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 440 n.15 (1974). Marquez Brothers now moves for entry of a preliminary injunction preventing Morelia from playing friendly matches in the United States unless they are sponsored by Marquez Brothers.

### III.  STANDARDS

In the Ninth Circuit, in order to obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions which address the merits of the case and the balance of hardships tips sharply in its favor, with at least a fair chance of success on the merits. Senate of California v. Mosbacher, 968 F.2d 974, 977 (9th Cir. 1992). The Ninth Circuit has stated that "these two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200-01 (9th Cir. 1980). A sharp tilt in the balance of hardships can affect the scale. Alaska v. Native Vill. of Venetie, 856 F.2d 1384, 1389 (9th Cir. 1988). Finally, a court finding that the public interest is involved may craft or withhold injunctive relief for the public's benefit. United States v. First Nat'l City Bank, 379 U.S. 378, 383 (1965).

In addition, under any formulation of the test, the moving party must show that there exists a

significant threat of irreparable harm. American Passage Media Corp. v. Cass Communications, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985). If the moving party fails to make this showing, the court need not decide whether the party is likely to succeed on the merits. Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985).

## IV.  DISCUSSION

### A.  Irreparable Harm

Marquez Brothers contends that it will be irreparably harmed by the loss of the intangible benefits flowing from its contract with Morelia. Marquez Brothers analogizes its situation to that of a sports team faced with a contract-breaking star player or record company faced with a contract-breaking performer, and argues that the loss of the brand-name recognition that comes from promoting soccer matches featuring Morelia could not be compensated by monetary damages. See, e.g., Washington Capitols Basketball Club v. Barry, 304 F. Supp. 1193, 1196-97 (N.D. Cal. 1969); Foxx v. Williams, 244 Cal. App. 2d 223, 236 (1966).

Morelia responds that Marquez Brothers has not shown any irreparable harm that will flow from the denial of a preliminary injunction. Morelia asserts that, although it did win the Mexican League championship in 2000, it is hardly a "star" team that has the fan base or name recognition that Mexican League teams such as Chivas have and thus, Morelia argues, comparisons to the loss of basketball superstar Rick Barry's services are factually inapposite. See Washington Capitols Basketball Club, 304 F. Supp. at 1196-97. Furthermore, while the Capitols might have built their organizational reputation on Rick Barry's ability to win games for his team, Morelia argues that Marquez Brothers' business of selling food is not built on Morelia's perhaps-unique or exceptional ability to defeat its on-field opponents in friendly matches in the United States. Additionally, Morelia argues that sponsoring its matches is not a substantial part of Marquez Brothers' business, as Marquez Brothers sponsors hundreds of events every year. Finally, Morelia contends that Marquez Brothers' failure to seek permanent injunctive relief in its prayer for relief demonstrates that any losses stemming from Morelia's alleged breach of contract could be compensated by monetary damages after a full trial.

Before the likelihood that Marquez Brothers will succeed on its claims need be determined, it must satisfy the threshold showing of irreparable harm. Oakland Tribune, Inc., 762 F.2d at 1376. Irreparable

harm involves "intangible injuries" that cannot be adequately compensated through monetary damages. Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991). Purely monetary injuries are not normally considered irreparable injuries deserving of preliminary injunctive relief, and "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Los Angeles Mem'l Coliseum Comm'n, 634 F.2d at 1197; Sampson v. Murray, 415 U.S. 61, 90 (1974) (citations omitted). Furthermore, California state law bars preliminary injunctions in order to,

> prevent the breach of a contract the performance of which would not be specifically enforced, other than a contract in writing for the rendition of personal services from one to another where the promised service is of a special, unique, unusual, extraordinary, or intellectual character, which gives it peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law....

Cal Civ. Code § 526(a)(5).

Marquez Brothers has not made the threshold showing of irreparable harm. Regardless of the import of Morelia's performance under the contract to Marquez Brothers' advertising efforts, Marquez Brothers makes only speculative and thinly supported allegations of irreparable harm in its submissions. See, e.g., Luce Supp. Decl. ¶ 14 (averring that allowing Morelia to play for other promoters "might make it more difficult for Marquez Brothers to promote these [exclusive] matches in the future"); see also Washington Capitols Basketball Club, 304 F. Supp. at 1197 ("irreparable injury is that which cannot be compensated by the award of money damages; it is injury which is certain and great" (emphasis added)). None of the supporting affidavits squarely address the substantiality or, indeed, the existence of the intangible losses that Marquez Brothers claims it will suffer if Morelia is allowed to play friendly matches in the United States. While Marquez Brothers alleges that it has suffered and continues to suffer significant monetary harm, such harm "would be easily calculable and compensable in damages" and thus does not lend support to preliminary injunctive relief. Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 471 (9th Cir. 1984) (finding no irreparable harm in removing a business from its sole premises).

As Marquez Brothers has not demonstrated any cognizable irreparable injury, Morelia's status as a unique or extraordinary team is besides the point. In any event, the record does not reflect the overall importance of Morelia to Marquez Brothers' advertising efforts or suggest that Marquez Brothers expended any effort in publicizing its connection to the team. While Marquez Brothers points to the large community in the United States with origins from Morelia's home state of Michoacan who represent a substantial and

5

unique fan base, Morelia counters that fans of Mexican soccer are more likely to follow Chivas or Club America, two more successful First Division teams. See Luce Supp. Decl. at ¶ 9; Garcia Decl. at ¶ 20. Whatever may be the ultimate resolution of that dispute, it does not rise on this record to a showing of irreparable harm for purposes of the extraordinary remedy of injunctive relief.

### B. Probability of Success on the Merits

Even if Marquez Brothers had made the threshold showing of irreparable harm, it nevertheless is not entitled to a preliminary injunction, as it has not demonstrated the requisite probability of success on the merits of its claim. See, e.g., Gerling Global Reinsurance Corp. of Am. v. Low, 240 F.3d 739, 743 (9th Cir. 2001). Marquez Brothers alleges that Morelia breached the contract between the parties. In order to establish a breach of contract claim, Marquez Brothers must establish "(1) the contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) the resulting damages to plaintiff." Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968). As noted above, at this stage in the litigation, Marquez Brothers does not have to prove its claim; instead, it must demonstrate a "likelihood of success on the merits and the possibility of irreparable harm" to be entitled to a preliminary injunction. Gilder v. PGA Tour, Inc., 936 F.2d 417; 422 (9th Cir. 1991).

The parties agree that the contract in this diversity case is to be interpreted under California law. The California Civil Code provides that "the language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. A trial court's determination of whether a contract is ambiguous is a matter of law. See Winet v. Price, 4 Cal. App. 4th 1159, 1165 (1992). If an ambiguity exists, then it must be determined whether extrinsic evidence may be admitted. "Under California law, '[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the contract is reasonably susceptible.'" Barris Industries, Inc. v. Worldvision Enterprises, Inc., 875 F.2d 1446, 1450 (9th Cir. 1989), quoting Pacific Gas and Electric Co. v. G.W. Thomas Drayage and Rigging Co., 69 Cal.2d 33, 36 (1968).

Both the original Spanish-language contract and a translation of the contract into English were attached to a declaration in support of Marquez Brothers' motion for a preliminary injunction. See Luce

6

Decl. Exh. D, E. Neither party disputes the accuracy of the translation. The parties agree that they entered into a valid contract. While Marquez Brothers argues that Morelia has breached the terms of the contract by attempting to play friendly matches in the United States organized by other sponsors, Morelia argues that the plain language of the contract reflects that it expired in December 2004 and that Morelia is thus no longer bound by its exclusivity provisions.

The contract provides that the ten matches to be played by Morelia and sponsored by Marquez Brothers are to be completed "during the period... agreed herein." See, e.g., Luce Decl. Ex. E pg. 1, 2, 5. The period of the contract is addressed in the seventh clause, "Duration," as lasting from the signing of the contract to "the day when the tenth friendly match is held under the present contract, in the understanding that the tenth match shall take place no later than the 31st (thirty first) of December of 2004 (two thousand and four)." Id. at 6. Marquez Brothers interprets this language to mean that the contract will last until Morelia plays ten matches under Marquez Brothers' sponsorship. Morelia urges the Court to read the second clause of the sentence as a limiting clause, placing a temporal boundary on the period in which the matches are to be played, with a limited exception, as set forth in Clause Eight, for the completion of previously scheduled matches that were "cancelled" during the contract period.

Without passing final judgment on the correct interpretation of the contract, Morelia's suggested reading of the contract finds support in its language and mitigates against a finding that Marquez Brothers has demonstrated a likelihood of success on the merits. See Sierra On-Line, Inc. v. Phoenix Software, Inc. 739 F.2d 1415, 1423 (9th Cir. 1984) (holding that "a preliminary injunction... is not a preliminary adjudication on the merits"). The parties' understanding, memorialized in the plain terms of the contract, is that it would end once the tenth match was played, and that match would be played no later than December 2004. See Luce Decl. Exh. E pg. 6. While Marquez Brothers argues that the contract calls for ten matches and by its terms will not be completed until the tenth match has been played, this reading is inconsistent with repeated references to a temporal period throughout the contract. See id. at 2 (the intention of Marquez Brothers was "to make the present contract, with the purpose of the TEAM participating in 10 (ten) friendly matches during the period and under the terms and conditions set forth in the present contract"); 5 (granting Marquez Brothers exclusivity "during the period of the present contract").

With respect to the contract provision pertaining to the completion of cancelled matches after

December 31, 2004, Marquez Brothers has not alleged in any of its papers that any such matches were in fact scheduled and then cancelled; instead, it alleges that Morelia failed to schedule matches and that this failure to schedule in the first instance constituted a breach. See id. at 7. Marquez Brothers points to People ex rel Dep't of Transportation v. Ad Way Signs, Inc., 14 Cal App. 4th 187, 197 n.12 (1993), as defining "cancelled" to mean "to make void; revoke; annul; **to cancel a reservation**." (emphasis in original). Again, Marquez Brothers does not allege that Morelia revoked or annulled scheduled matches, nor does it allege that Morelia agreed to play at a certain place and at a certain time and then backed out, thus "cancelling" a reservation. By the express language of the contract, therefore, Morelia was within its rights to reject proposed matches without penalty. See Luce Decl. Exh. E at 2 (providing that "the CLUB will be the one who decides whether to accept the proposal or not").

Marquez Brothers has submitted affidavits asserting that Morelia bargained for a contract that would bind the team to play ten matches. See Luce Supp. Decl. ¶ 2. Marquez Brothers also argues that Morelia's reading of the contract would result in a contract that is void for lack of consideration, as Marquez Brothers would be paying Morelia a substantial amount of money while Morelia would not be required to play in any matches. It is a settled point of law that, for a contract to be binding, both parties must assume some legal obligation. See, e.g., Mattei v. Hopper, 51 Cal. 2d 119, 122 (1958) (holding that, "without this mutuality of obligation, the agreement lacks consideration and no enforceable contract has been created"). Even had Morelia failed to play any matches (the undisputed facts reflect that two matches were played pursuant to the contract), Marquez Brothers would still have received consideration in the form of exclusivity, as Morelia would have been precluded by the terms of the contract from playing for any other sponsor. See Luce Decl. Exh. E pg. 5. As Marquez Brothers argues Morelia's "brand" has great value, this consideration would have made for a potentially lucrative competitive advantage.

Marquez Brothers also alleges that Morelia breached the contract in part by attempting to play matches in the United States not sponsored by Marquez Brothers. Those attempted matches, however, and the negotiations to prepare for them took place after December 31, 2004. It is impossible to breach an expired contract. See Shida v. Japan Food Corp., 251 Cal. App. 2d 864, 866 (1967). The plain language of the contract suggests that it expired on December 31, 2004, before Morelia began to look for other sponsors. Thus, Marquez Brothers has not demonstrated that it is likely to succeed on the merits of

1 its breach of contract action on the grounds that Morelia breached the agreement through its efforts to
2 schedule matches with other sponsors.

3 Similarly, while both parties cast the blame for the inability to schedule matches on the other, the
4 declarations submitted by the parties leave that question open. See generally, Luce Decl. (averring good-
5 faith cooperation for Marquez Brothers' part and blaming scheduling difficulties on Morelia); Garcia Decl.
6 (averring good-faith cooperation for Morelia's part and blaming scheduling difficulties on Marquez
7 Brothers). The limited weighing and balancing of this evidence appropriate at this stage of the litigation
8 does not support a finding that Marquez Brothers has a sufficient probability of success on the merits of its
9 claims to entitle it to a preliminary injunction against Morelia, especially when considered in light of
10 Marquez Brothers' failure to demonstrate irreparable harm.

11 C. The Balance of Hardships

12 Marquez Brothers argues that it is entitled to a preliminary injunction against Morelia because the
13 balance of hardships tilts sharply in its favor. Marquez Brothers contends that, if the preliminary injunction
14 is not granted, it will irreparably lose the exclusive right to promote Morelia's matches in the United States.
15 Further, Marquez Brothers argues that Morelia will not be harmed by the injunction, as it could still play
16 friendly matches in the United States as long as they were organized by Marquez Brothers. Finally,
17 Marquez Brothers insists that any revenue drop incurred by Morelia would be minimal, as it has only played
18 two friendly matches in the United States over the past two years.

19 Morelia responds that, as it usually makes $50,000 per friendly match, it will be substantially
20 harmed by a preliminary injunction preventing it from playing friendly matches in the United States.
21 Additionally, Morelia contends that Marquez Brothers has not demonstrated with any certainty how it
22 would be irreparably harmed if Morelia were to play for another promoter in the United States, as Marquez
23 Brothers would still be able to advertise through its extensive sponsorship efforts and would not lose any
24 brand recognition.

25 The weighing of the balance of hardships is one of the factors set forth in the Ninth Circuit's
26 preliminary injunction standard. See, e.g., Raich v. Ashcroft, 352 F.3d 1222, 1227 (9th Cir. 2003), rev'd
27 on other grounds sub nom. Gonzales v. Raich, 125 S. Ct. 2195 (2005); Bayer Corp. v. Roche Molecular
28 Sys., Inc., 72 F. Supp. 2d 1111, 1116 (N.D. Cal. 1999). A sharp tilt in the balance of hardships can

9

counterbalance a lesser likelihood of success on the merits. See Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 315 (9th Cir. 1978). A preliminary injunction is proper in situations in which there are serious questions of success on the merits and the possibility of irreparable injury but the balance of hardships "tips sharply in favor of the moving party." Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839-40 (9th Cir. 2001).

Marquez Brothers has not demonstrated that the balance of hardships tilts significantly in its favor. Hardship has been found in situations such as a union's existence being threatened by ongoing severe financial mismanagement. Benda, 584 F.2d at 315. Marquez Brothers does not allege that it will go out of business if Morelia is free to play for other sponsors while this litigation moves forward. As noted above, Marquez Brothers does not allege any specific hardship that would entitle it to a preliminary injunction. Morelia's allegation of the probability of harm to the team is bolstered by its attempts to secure sponsors for friendly matches in the United States and Marquez Brothers' hitherto successful prevention of those matches. See Luce Decl. Exh. T. While it is true that Morelia has only played two matches in the United States in the past two years, suggesting that it might not be significantly harmed by an injunction, Marquez Brothers has been its promoter for that period in a relationship indisputedly fraught with difficulties. In light of the absence of any showing that the balance of hardships tips in favor of Marquez Brothers, that factor, combined with the analysis of irreparable injury and success on the merits above, precludes the entry of preliminary injunctive relief.

D. The Public Interest

Finally, Marquez Brothers asserts that the public interest favors a preliminary injunction in this case, as such relief would provide notice of the ongoing litigation to Morelia's potential sponsors and opponents and prevent them from being open to liability if they accepted a match. Morelia argues that soccer promoters and clubs are not the "public" contemplated by the Ninth Circuit's weighing of public interest factors in deciding whether to grant a preliminary injunction and that Marquez Brothers has not shown how the public interest would be affected by an injunction.

The Ninth Circuit has held that, "in cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." Sammartano v. First Judicial Dist. Ct., 303 F.3d 959, 965 (9th Cir. 2002) (citations omitted). Such an inquiry focuses on the effects on non-parties of

granting or denying a preliminary injunction. Id. at 974.  Effects tied to the public interest classically are First Amendment questions or restraints on government action.  See, e.g., id. at 975 (upholding injunction preventing persons who refused to remove motorcycle club patches from entering part of county courthouse); Harris v. Board of Supervisors, 366 F.3d 754 (9th Cir. 2003) (upholding injunction preventing closure of medical clinic); Regents of Univ. of California v. American Broadcasting Co., 747 F.2d 511, 527 (9th Cir. 1984) (public interest not significantly served by injunction requiring broadcast of college football game).

This is not a public interest case; instead, it is a contract dispute between two private parties.  Marquez Brothers has not demonstrated why the potential exposure of third parties to its own threats of future legal claims is a legally cognizable interest that mandates injunctive protection.  Furthermore, the record is clear that Marquez Brothers has in fact shown itself willing and able to put third parties on sufficient notice of its potential legal claims without judicial aid.  See Luce Decl. Exh. S (expressing trust that a third party "will take appropriate action to avoid... tortuous interference").  Thus, the public interest is not implicated by the conduct sought to be enjoined and, therefore, lends no support to Marquez Brothers' motion.

## V.  CONCLUSION

As Marquez Brothers has not demonstrated either significant irreparable harm or a high probability of success on the merits of its suit, nor does the balance of hardships tilt so drastically in its favor that a lesser showing of harm or success on the merits is warranted, its motion for a preliminary injunction is denied.

IT IS SO ORDERED.

Dated: August 5, 2005                           /s/ Richard Seeborg
                                                RICHARD SEEBORG
                                                United States Magistrate Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Lisa Eileen Aguiar    laguiar@ssd.com

Nicole M. Healy    nhealy@wsgr.com

Daniel B. Pollack    dpollack@ssd.com, pal_docket@ssd.com;krose@ssd.com

Ignacio E. Salceda    isalceda@wsgr.com, rlustan@wsgr.com

Brian Peter Thomas    bthomas@wsgr.com

Lloyd Winawer    lwinawer@wsgr.com

**Dated: 8/5/05**                                                    **Richard W. Wieking, Clerk**

**By:_____DM_____**
         **Chambers**